IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

CIVIL NO. 1:04CV46
(1:01CR45 & 3:01CR11-3)

| | |
|---|---|
| PHILIP B. GREER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| Vs. ) | **MEMORANDUM AND ORDER** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on the Petitioner's motion, including exhibits attached thereto, to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. No response is necessary from the Government.

A prisoner in federal custody may attack his conviction and sentence on the grounds that it is in violation of the Constitution or United States law, was imposed without jurisdiction, exceeds the maximum penalty, or is otherwise subject to collateral attack. 28 U.S.C. § 2255. However,

> [i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

Rule 4, Rules Governing Section 2255 Proceedings for the United States District Courts. The Court, having reviewed the record of proceedings below, enters summary dismissal for the reasons stated herein.

# I. PROCEDURAL HISTORY

On June 5, 2001, Petitioner entered into a plea agreement with the Government in which he agreed to plead guilty to six counts of the superseding bill of indictment filed in case 3:01cr11-3 and to the one count bill of information filed in case 1:01cr45 all arising out of his participation in a Ponzi scheme (Banyan International Limited) involving hundreds of victims, millions of dollars, and in conspiracy with co-Defendants Phillip Mark Vaughan, Terry W. Stewart, Howard T. Prince, III, Timothy B. Burnham, and others. All of the Defendants pled guilty with the exception of Stewart, who was convicted after a jury trial in November 2001 and sentenced by the undersigned to 2,100 months imprisonment. Specifically, the Petitioner agreed to plead guilty to:

(1) Count One, conspiracy to engage in mail, wire, bank and securities fraud and to sell unregistered securities in violation of 18 U.S.C. § 371;

(2) Count Fourteen, a money laundering conspiracy to launder money by domestic transactions to promote the fraud scheme, engage in tax fraud or evasion, and concealing the proceeds therefrom, and international transfers to promote and conceal these frauds in violation of 18 U.S.C. § 1956(h);

(3) Count Fifteen, the transfer of $648,574.29 in proceeds from a fraudulent BB&T loan to a Banyan controlled Pure Trust Organization ["PTO"] to promote the investor fraud scheme by making lulling payments;

(4) Count Seventeen, the transfer of $250,000 from a Banyan PTO account to Banyan's largest investor as a lulling payment in order to promote the fraud scheme;

(5) Count Thirty-Two, the transfer of $150,000 in Banyan investor money which was used to facilitate the tax fraud and evasion; and

(6) Count Thirty-Five, a $1,014,510 wire transfer in Banyan investor money to an offshore bank account to facilitate tax fraud and evasion and to promote the fraud scheme.

*See* **Second Superseding Bill of Indictment, filed May 10, 2001, in Criminal No. 3:01CR11; Plea Agreement, filed June 5, 2001; Government's Sentencing Memorandum, filed March 24, 2003, at 1-2.** The Petitioner also agreed to plead guilty to a one-count bill of information charging him with being a commodity pool operator who knowingly employed a scheme and artifice to defraud a member of that pool in violation of 7 U.S.C. §§ 6o(1) and 13(a)(2).

In the plea agreement, Petitioner was advised that he faced a maximum sentence of 110 years imprisonment along with fines, restitution and assessments. **Plea Agreement,** *supra*, **at 1.** He also waived the right to contest his conviction or sentence on direct appeal or pursuant to 28 U.S.C. § 2255 on any grounds other than ineffective assistance of counsel or prosecutorial misconduct. *Id.*, **at 5.** He does not allege prosecutorial misconduct in his petition.

On June 5, 2001, Petitioner attended a Rule 11 hearing and was advised, among other things, of the maximum possible sentences and his waivers. **Rule 11 Inquiry and Acceptance of Plea, filed June 5, 2001.** As is the custom in this Court, not only did the Petitioner answer each question during the hearing, but he and his attorney signed the Rule 11 Inquiry which was then filed of record. *Id.* In that Inquiry, Petitioner acknowledged that his written plea agreement, which he also had signed, contained a provision waiving his right to appeal his conviction or sentence or to contest it in any collateral proceeding, including a § 2255 petition, on any ground other than ineffective assistance of counsel or prosecutorial misconduct. *Id.* Petitioner also acknowledged that his guilty plea was knowing and voluntary, he was satisfied with the services of his attorney, he understood the sentencing guidelines and how they applied to him, he had been afforded sufficient time to discuss his case with his attorney, and he understood and agreed with the terms of his plea agreement. *Id.* The Petitioner further advised the Court that he was

pleading guilty because he was in fact guilty of the crimes contained in the indictments; that his plea was voluntary "and not the result of coercion, threats or promises other than those contained in the written plea agreement;" he acknowledged that if the sentence imposed was harsher than expected, he was still bound by his guilty plea; that he knew and fully understood what he was doing and wanted the Court to accept his plea of guilty; and that he had no questions or comments to make about any matter discussed in the course of the proceeding. *Id*.

During the presentence investigation, the Petitioner disclosed to the probation officer that he was in good health, that he had no history of mental or emotional problems, and reported no use of or experimentation with illegal drugs. The Petitioner is well educated having received a B.S. degree in 1982; he was a successful, self-employed businessman until his association with Banyan International Ltd., and the co-Defendants therein. **Presentence Investigation Report, revised March 18, 2003, at 14-15.**

The maximum sentence for the counts to which the Petitioner pled guilty was a total of 110 years. Due in part to his attorney's due diligence and tireless efforts on his behalf, the undersigned sentenced the Petitioner on March 25, 2003, to a term of 120 months imprisonment. The Petitioner did not file a direct appeal, but now attacks his conviction and sentence on the grounds that he was a victim of ineffective assistance of counsel and that the Court failed to protect his rights in a variety of ways.

## II. DISCUSSION

Petitioner lists an all too familiar litany of complaints, most of which are contradicted by his own statements of record in his sworn plea agreement and Rule 11 inquiry as set forth above. For example, he contends that he relied on false promises by his attorney as to what his sentence range would be and the amount of restitution for which he would be responsible including enhancements based on such amounts. In his plea agreement, the monetary amounts on which he was sentenced are set forth. **See, Plea Agreement,** *supra*, **at 1-2.** Regarding the Petitioner's claim of defense counsel's "promises" of a final sentence range, the plea agreement states:

> The defendant is further aware that the Court has not yet determined the sentence, that any estimate from any source, *including defense counsel*, of the likely sentence is a prediction rather than a promise, and that *the Court has the final discretion* to impose any sentence up to the statutory maximum.

*Id.*, **at 1 (emphasis added).** Likewise, during the Rule 11 inquiry, the Petitioner acknowledged his understanding that in the event his sentence was harsher than expected, he was still bound by his guilty plea. **Rule 11 Inquiry,** *supra*, **at 11.**

Petitioner next contends he did not have the required 35 days to review the presentence report. The record reveals the report was initially prepared on February 27, 2003; it was revised on March 18, 2003, after the receipt of a document from Petitioner's attorney entitled, "Responsibility and Accomplishments with Promissions: Projects Reaching Others," outlining Petitioner's missionary efforts. No objections were filed either at the sentencing hearing or prior thereto. Prior to the sentencing hearing, the Petitioner reviewed a copy of his presentence report with his attorney. In an affidavit provided to the Court, his attorney avers that the Petitioner understood the contents of the presentence report. **See Affidavit of David Belser, filed August**

**1, 2005.** The Petitioner did not inform the Court at the time of sentencing that he had not received the presentence report in a timely manner or that he had been denied an adequate opportunity to review it contents. There is no reference to the 35-day disclosure rule in the record; therefore, without more, the Court finds Petitioner's claim to be supported by conclusory allegations, at best. Thus, the Court concludes that the Petitioner fully understood the contents of the presentence report. Further, Petitioner fails to demonstrate any resulting harm inasmuch as the sentence imposed was in accordance with the plea agreement and reflected the Court's consideration and granting of the Government's motion for downward departure.

The Petitioner also alleges that he was not advised of his right to read the Special Master's Report and Recommendation; this report was compiled pursuant to a request from the Court in an effort to determine the amount of restitution due the hundreds of victims involved in the Banyan fraud scheme. The Special Master's Report did not determine the amount of restitution for sentencing purposes; that amount was set forth in the plea agreement which the Petitioner and his attorney signed. However, a copy of each report by the Special Master was sent to every defense attorney involved in the criminal cases; there is no response, objection, or any other request regarding these reports filed by this Petitioner or his attorney or any other Defendant or defense counsel.

Petitioner next contends that he was not advised of his appeal rights. The record reveals that the Court advised the Petitioner at his sentencing hearing that (1) he had a right to appeal the judgment of the Court to the Fourth Circuit Court of Appeals on the grounds of ineffective assistance of counsel and/or prosecutorial misconduct if either of those grounds existed; (2) that if he chose to appeal, he must file a written notice of appeal with the Clerk of this Court within a

period of 10 days after entry of the final judgment in his case; and (3) that if he chose to appeal and did not have the funds with which to pursue the appeal, he could file an affidavit of indigency and if approved by the Court, he would be allowed to appeal at Government expense. The Court then inquired if the Petitioner understood his rights to appeal as the Court had explained that right to him; he answered in the affirmative. **Transcript of Sentencing Hearing, at 12.** Therefore, the Court finds that the Petitioner fully knew and understood his appeal rights despite his present allegations to the contrary.

The Petitioner also alleges he was not afforded the right of personal elocution at sentencing. The record reveals he was indeed given that opportunity. *Id.*, **at 5.**

Petitioner also contends the victim loss amounts are inflated. However, in the plea agreement, he and his attorney agreed that "the Court may accept the information in the Presentence Investigation Report, except any fact to which the defendant files written objections, as establishing sufficient factual findings regarding the amount of loss sustained by the victim[.]" **Plea Agreement, at 4.** Petitioner did not file any objections to the presentence report.

As a college graduate with years of business experience, it is difficult for the Court to imagine that the Petitioner did not understand, agree with, and participate in every decision made by his experienced attorney. It is even more difficult to understand the claims made throughout his motion which are totally in contradiction to the written record in this case. For example, during the Rule 11 inquiry, he stated under oath in answering the Magistrate Judge, that he was "entirely satisfied" with the services of his attorney. **Transcript of Rule 11 Proceedings, filed March 17, 2003, at 12.**

> [T]he record reflects that the [Magistrate Judge] conducted a thorough and comprehensive Rule 11 hearing prior to accepting [Petitioner's] guilty plea. In that proceeding, . . . [Petitioner] stated, among other things, that no one had coerced him into pleading guilty and he was in fact guilty of the [conspiracy] offense. [Petitioner] was advised of the essential terms of the plea agreement, and he asserted under oath that he understood them. The court reviewed the maximum permissible sentence on the [felony] conviction[s], and [Petitioner] acknowledged that he understood. The court also advised [Petitioner] of the constitutional rights being waived by his guilty plea, and he again indicated his understanding. In these circumstances, [Petitioner's] conclusory post-[conviction] assertions that his plea was not knowing and voluntary . . . fail to overcome the barrier of the sworn statements made at his Rule 11 hearing.

**United States v. Ubakanma**, 215 F.3d 421, 424 (4th Cir. 2000). A defendant's statements at a Rule 11 hearing are "strong evidence" of voluntariness and knowledge. **United States v. DeFusco**, 949 F.2d 114, 119 (4th Cir. 1991).

> [R]epresentations of the defendant . . . at [a Rule 11 hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, *as are contentions that in the face of the record are wholly incredible.*

**Blackledge v. Allison**, 431 U.S. 63, 73-74 (1977) (emphasis added).

Based on the Petitioner's plea agreement, his signature on the Rule 11 Inquiry, the advice he received from the Court during the Rule 11 hearing, and his representations during that hearing, the Court finds Petitioner knowingly and voluntarily entered into the plea agreement and plead guilty to the counts of the indictments cited *infra*. **DeFusco, supra.** Thus, the Court also finds the Petitioner made a knowing and voluntary waiver of the right to attack his conviction or sentence by a collateral proceeding such as a § 2255 motion except as noted in his plea agreement. **See, United States v. Shea**, 175 F.3d 1018 (table), 1999 WL 172810 (4th Cir. 1999); **United States v. Pelzer**, 166 F.3d 336 (table), 1998 WL 879019 (4th Cir. 1998) (citing

*United States v. Wessells*, 936 F.2d 165, 167-68 (4th Cir. 1991)); *United States v. Hoyle*, 33 F.3d 415, 418 (4th Cir. 1994).

Next, Petitioner claims his attorney, David Belser, was ineffective for the reasons previously addressed and others considered by the Court to be meritless. In considering Petitioner's claims that he has not received adequate assistance of counsel,

> [f]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 686 (1984). Unless a defendant makes both showings, his claim of ineffective assistance of counsel must fail. *Id.* Thus, a defendant must show counsel's performance fell below objective standards of reasonableness, and, that but for his conduct, there was a reasonable probability the result would have been different. *Id.*, **at 688;** *Hill v. Lockhart*, 474 U.S. 52 (1985); *Fields v. Attorney Gen. of Maryland*, 956 F.2d 1290 (4th **Cir. 1992) (In order to obtain relief from a guilty plea on the basis of ineffective assistance of counsel, a defendant must show both that counsel was incompetent and but for that incompetence, he would not have pled guilty).** If the defendant fails to make the first showing, there is no need to consider the second. *Strickland, supra.*

The language of the plea agreement; the record of the Rule 11 inquiry; the record of the sentencing hearing; the fact that prior to this motion the Petitioner has failed to file a single objection to counsel's performance, but to the contrary, he has previously expressed his full satisfaction with counsel; the fact that the Petitioner faced up to a statutory maximum of 110

years imprisonment, of which the final sentence (reflected by the plea agreement and motion for downward departure) of 120 months was a mere fraction, disproves the Petitioner's accusations against his attorney. Instead, these factors indicate a job well done by a dedicated, experienced attorney who worked diligently and successfully on behalf of a now ungrateful client. Thus, the Court concludes that counsel's performance was not deficient and the second prong of *Strickland* need not be reached. Petitioner's motion is found by this Court to be void of merit and will be summarily dismissed.

### III. ORDER

**IT IS, THEREFORE, ORDERED** that the Petitioner's motion to vacate, set aside, or correction judgment is hereby **DENIED**. A Judgment dismissing the action is filed herewith.

**Signed: August 5, 2005**

Lacy H. Thornburg
United States District Judge